*Ex parte* OVERINGTON.

1812.

*Philadelphia,*
*Monday,*
December 28.

THIS was a petition by *William Overington* to be admitted to the rights of a citizen of the United States, upon taking the oaths prescribed by law.

The father of the petitioner, *John Overington*, a native subject of *Great Britain*, arrived in the United States on the 10th of *October* 1807. He reported himself and the petitioner, then and still a minor, in conformity to the second section of the act of Congress of the 14th of *April* 1802; and resided in the state of *Pennsylvania*, from the time of his arrival, until the first day of *October* 1809, when he died.

On a former day of this term, the petitioner, conceiving himself intitled to naturalization, under the act of 26th of *March* 1804, which in the case of an alien who complies with the act of 1803, and dies before he is actually naturalized, confers citizenship on his widow and children upon taking the oaths prescribed, declared his own intention to become a citizen, and presented this petition, upon which the Judges now delivered their opinions.

TILGHMAN C. J. after stating the facts, pronounced his opinion as follows:

It is enacted by the act of Congress passed the 14th of *April* 1802, that any alien being a free white person, may be admitted to become a citizen of the United States on certain conditions, the first of which is, that he shall have declared on oath, three years at least before his admission, that it was *bona fide* his intention to become a citizen of the United States. The second section of this act directs, that all free persons being aliens, who may arrive in the *United States*, shall make a report of themselves in the manner therein directed. But the act contains a proviso that no alien who shall

*A, a British subject, emigrated to the United States on the 10th of October 1807, at which time he reported himself and an infant son, agreeably to law, and declared his intention to become a citizen of the United States. He resided in Pennsylvania from the time of his arrival until his death on the 1st of October 1809. Subsequent to the present war between the United States and Great Britain, and after the expiration of five years from his father's arrival, the son petitioned to be admitted to the rights of citizenship upon taking the oaths prescribed by law. Held, that as the father himself if living could not be admitted to the rights of citizenship during the war with Great Britain, neither can his son be; the proviso in the act of Con-*

gress of the 14th of *April* 1802, which denies the privileges of citizenship to the subjects of a sovereign with whom the *United States* is at war at the time of the application, extending to the supplemental act of the 26th of *March* 1804, which in the case of an alien who has declared his intention &c., and dies before he is actually naturalized, intitles his widow and children to be naturalized on taking the requisite oaths.

be a native citizen, denizen or subject of any country, state, or sovereign, with whom the *United States* shall be at war *at the time of his application*, shall be then admitted to be a citizen of the *United States*. By a supplement to this act passed the 26th of *March* 1804, it is enacted, that when any alien who shall have complied with the first condition specified in the first section of the original act, and shall have pursued the directions prescribed in the second section of the said act, may die before he is naturalized, his widow and children shall be considered as citizens of the *United States*, and shall be intitled to all rights and privileges as such, upon taking the oath prescribed by law.

The question to be considered, is whether the proviso in the original act, forbidding the naturalization of an alien, who is a native subject of a sovereign with whom the *United States* are at war, is to be extended to the supplement under which the petitioner applies for naturalization. These acts being made on the same subject, are intimately connected, and must be considered as parts of one system. The non-admission of alien enemies to the rights of citizenship, is a principle equally applicable to persons described in the original act and in the supplement. If the petitioner's father had been now living, he could not have been naturalized, although he had complied with all previous requisites, and nothing was wanting but his taking the oath prescribed by law. Why then should his son be in a better situation? Why was this principle forbidding the naturalization of an alien enemy introduced into the original law? I presume it was because the Congress thought it improper to accept the allegiance of a man for whom they could not claim the rights of an *American* citizen, in case he should fall into the hands of the enemy. If one of our own citizens should, during the present war, take an oath of allegiance to the king of *Great Britain*, our government might prosecute him for treason, if he were taken fighting against us. *Great Britain* and all the powers of *Europe* claim the same right over their subjects. Besides, it might have been thought dangerous to admit into the bosom of the country in the heat of war, persons who, having resided but a few years among us, might still retain a strong attachment to their native land. I do not say that these were the only reasons for introducing the proviso on

which this question arises, but it appears to me that they are some of the strongest that can be assigned, and they apply with as much force to the petitioner as to his father. Nay, they apply with much greater force; because the father could not have been naturalized without a residence of *five years* in the *United States*. Whereas the petitioner, if his construction of the law is right, in case his father had made the necessary report, and made a declaration of his intention to become a citizen, and died on the very day of his arrival in the *United States*, would have been intitled to the right of naturalization, immediately on taking the oaths prescribed by law. It may be said, that the supplement being subsequent to the original law, and being absolute in its terms, is to be construed without reference to the proviso. But to say that it has no reference to the proviso, is begging the question. There may be a reference by implication, and I think there is. The two laws make but one system, which would be marred by striking out of either a prominent feature equally applicable to both. I am therefore of opinion that the petitioner being a native subject of the king of the united kingdom of *Great Britain* and *Ireland*, with whom the *United States* are now at war, cannot *at this time* be admitted to the rights of citizenship.

YEATES J. I have the misfortune of dissenting from the opinion delivered, upon the best consideration I have been able to give to the subject.

The objection to the prayer of the petitioner being granted, is grounded on the proviso expressed in the act of Congress establishing an uniform rule of naturalization, passed the 14th of *April* 1802, " that no alien who shall be " a native citizen, denizen or subject of any country, state " or sovereign, with whom the *United States* shall be at " war at the time of his application, shall be then admitted " to be a citizen of the *United States*." His father *John Overington* was a subject of *Great Britain*, and arrived in the *United States* on the 10th of *April* 1807, in a time of profound peace between the two countries, the petitioner being then and still a minor. He afterwards died on the 1st of *October* 1809. I admit that the father if living, could not now take the oaths precribed by law, by reason of his being

1812.

Ex parte
OVERING-
TON.

considered an alien enemy; but I do not view the petitioner in the same light under the additional act to the naturalization law, passed on the 26th of *March* 1804. The second section thereof modifies the restriction as to children under certain limitations. It provides, "that when *any* alien who shall "have complied with the first condition specified in the "first section of the said original act, and who shall have "pursued the directions prescribed in the second section of "the said act, may die, before he is actually naturalized, "the widow and the children of such alien shall be consi- "dered as citizens of the *United States,* and shall be in- "titled to all rights and privileges as such, upon taking "the oaths prescribed by law." That the petitioner is within the words of this section cannot I think be contro- verted. His parent has conformed to the conditions. Why is he not within the spirit of the act? If Congress had in- tended to incapacitate children under such circumstances from becoming citizens, upon a change of the amicable re- lation between their native country and the *United States,* would they not have introduced some provision to this effect? I readily agree that we must take into consideration the original act, when we are called upon to give a con- struction to the latter. But alterations in the last law abro- gate the former. I think there is a sound political distinction between a father and his minor children on the breaking out of a war. The father has strong prejudices and prepos- sessions in favour of his native soil, where he has spent the earlier years of his life; but the *natale solum* has not such influence on the minds of minor children. The bounty of congress may therefore extend to them privileges denied to their father.

I am of opinion, that the prayer of the petitioner should be granted.

BRACKENRIDGE J. concurred in opinion with the Chief Justice.

*Petition refused.*